UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-60807-CIV-ALTMAN/Hunt

**SIMON PROPERTY GROUP, L.P., et al.**,

    Plaintiffs,

v.

**CASINO TRAVEL, INC., et al.**,

    Defendants.

_____/

## ORDER

**THIS MATTER** came before the Court upon the Plaintiffs' Motion for Preliminary Injunction (the "Motion") [ECF No. 6]. The Court conducted an evidentiary hearing on the Motion on May 9, 2019, at which the Plaintiffs presented the testimony of two witnesses. The hearing resumed on May 29, 2019, when the Plaintiffs and the Defendants each called witnesses and at the conclusion of which the parties presented their oral arguments. The Court has carefully reviewed the Plaintiffs' Motion, the record, and the applicable law. For the reasons set out below, the Court hereby **DENIES** the Plaintiffs' Motion.

## The Facts

On March 27, 2019, the Plaintiffs, Simon Property Group, L.P. ("Simon Property"); Simon-Mills III, LLC ("Simon-Mills"); and Sunrise Mills (MLP), L.P. ("SMLP"), brought this action for injunctive relief and damages against the Defendants, Casino Travel, Inc. ("Casino"); Half Price Tour Tickets, LLC ("Half Price"); Tour95, LLC ("Tour95"); John Sansac; and Sol Taylor. *See* Compl. [ECF No. 1].

The Plaintiffs own and operate Sawgrass Mills, a large shopping mall in Sunrise, Florida. Simon Property and Simon-Mills are the registered owners of the following trademarks (the "Sawgrass Marks"), which are valid marks registered on the Principal Register of the United States Patent and Trademark Office:

| Registered Trademark | Registration Number | Registration Date | Classes/Goods/Services |
|---|---|---|---|
| **SAWGRASS MILLS** (the "Word Mark") | 1750400 | February 2, 1993 | IC 036 – Shopping center services and leasing of shopping mall space |
| (the "First Design Mark") | 1750401 | February 2, 1993 | IC 036 – Shopping center services and leasing of shopping mall space |
| (the "Second Design Mark") | 2316377 | February 8, 2000 | IC 036 – Shopping center services and leasing of shopping mall space |

| | | | |
|---|---|---|---|
| (the "Third Design Mark") | 5350812 | December 5, 2017 | IC 009 –Magnetically encoded gift cards; magnetically encoded stored value cards.<br>IC 035 – business management services in connection with retail shopping centers; promoting the goods and services of others by means of operating retail shopping centers; advertising and marketing services; digital marketing services; promoting the goods and services of others by means of marketing and selling gift cards; promoting the goods and services of others by means of sponsorship relationships and strategic alliances; on–line retail store services in the field of gift cards.<br>IC 036 – Management and leasing of retail shopping center space; retail shopping center services, namely, rental of shopping center space.<br>IC 037 – real estate development of retail shopping centers, namely, the planning and management of the construction of retail shopping venues.<br>IC 041 – retail shopping center services, namely, the hosting and conducting of entertainment events at retail shopping venues. |

Compl. ¶ 15.

The Complaint asserts federal claims of trademark infringement, false designation of origin, and unfair competition, along with related state-law claims, against the Defendants. *See generally* Compl. In essence, the Complaint alleges that the Defendants misappropriated the Sawgrass Marks and thereby caused confusion in the marketplace. *Id.* ¶¶ 15–85. SMLP also brings a breach-of-contract claim against Casino. *Id.* ¶¶ 86-91. The Complaint seeks damages and injunctive relief, both preliminary and permanent, against the Defendants. *Id.* at 22.

The Motion avers that the Defendants' misuse of the Sawgrass Marks will, if allowed to persist, cause the Plaintiffs irreparable harm. [*See* ECF No. 6]. After filing the Motion, the Plaintiffs voluntarily dismissed their claims against Taylor. [ECF No. 54]. Two other Defendants, Half Price and Sansac, never appeared in this action, and the Plaintiffs have obtained default final judgments and permanent injunctions against both of them. [*See* ECF Nos. 63, 65]. As of this Order, then, the Motion remains pending only against Casino and Tour95.

At the hearing, the parties presented testimony and exhibits that established the following relevant facts. Casino, through its president, Diego Casaballe, entered into a contract with SMLP (the "Service Agreement"), whereby Casino agreed to provide private shuttle services to transport customers to Sawgrass Mills. [*See* ECF No. 6-1 at 12–22]. The Service Agreement allowed Casino to use the Sawgrass Marks to promote its shuttle services. *Id.* at 13. At the same time, the Agreement required Casino to cease using the Sawgrass Marks—and to destroy or return to SMLP all materials bearing the Sawgrass Marks—immediately upon the expiration or termination of the Service Agreement. *Id.* The Service Agreement was renewed multiple times. The final renewal took effect on October 1, 2018 and would have expired on March 31, 2019. *Id.* at 12. Notably, SMLP retained the right to terminate the Service Agreement for any reason during the renewed term. *Id.* at 13.

Much of the testimony surrounded a November 14, 2018 meeting attended by Casaballe, Sawgrass Mills Director of Tourism Victoria Cervantes, Sawgrass Mills Marketing Director Chris Valle, and Sansac (a South Florida tourism services provider who owned Half Price). At the time of the meeting, the parties agree, Casino's financial condition was poor. During the meeting, Casaballe informed the Sawgrass Mills representatives that Sansac would be helping Casino to operate the Sawgrass-branded shuttles, which were now housed in a parking lot that Sansac owned.

According to the Sawgrass Mills representatives, Casaballe also informed them that Sansac had taken control of sawgrassmillsshuttle.com, a website Casino had previously operated, which displayed the Sawgrass Marks for the purpose of advertising Casino's shuttle services.

The news at the November 14 meeting alarmed the Sawgrass Mills representatives because the Service Agreement prohibited Casino from assigning any of its rights under that agreement to any other party without SMLP's prior written consent. [*See* ECF No. 6-1 at 17]. Shortly after the meeting, Sawgrass Mills instructed Casaballe and Sansac to remove both the Sawgrass-branded wrapping from the shuttle buses and the Sawgrass Marks from the sawgrassmillsshuttle.com website. On November 29, 2018, after it became clear that neither Casaballe nor Sansac planned to respond to its demand, SMLP sent Casino a written notice terminating the Service Agreement. *Id.* at 24.

In December 2018, Cervantes learned that the Sawgrass-branded buses were still operating without Sawgrass Mills' authorization. Cervantes testified that the quality of the shuttle service had declined substantially in the closing months of 2018, and that the Sawgrass Mills branding on the buses had led to a significant increase in marketplace confusion. Specifically, Cervantes testified that a number of local concierge operators had been misled into believing that the now-degraded bus services were still affiliated with Sawgrass Mills. Moreover, in January 2019, Cervantes visited the sawgrassmillsshuttle.com website and noticed that it continued to display the Sawgrass Marks.

Casaballe, for his part, testified that he shut down Casino in late November 2018. Notably, the record contains no evidence that Casino has operated a single bus trip since. In any case, the parties agree that Casino is no longer in operation. Moreover, Casaballe testified that, as of October 2018, he stopped paying the fees that are required to operate the sawgrassmillsshuttle.com website.

According to Casaballe, Sansac subsequently took over that site along with a phone number Casino had used to handle reservations and operate the shuttle.

The evidence failed to establish exactly how Sansac succeeded in obtaining Casino's web domain or its phone number. The Plaintiffs suggested, without support, that Sansac and Casaballe had conspired to transfer ownership of the number and the website to Sansac as a way of shielding Casino from liability. Casaballe, during his testimony, denied that he had engaged in any coordination with Sansac after Casino went out of business in November 2018.[1] In fact, Casaballe testified that his relationship with Sansac ended abruptly after he broke into Sansac's lot in November or December 2018 and removed the license plates from Casino's buses. Having learned that Casaballe had broken into his lot without permission, Sansac became enraged and forbade Casaballe from further entry onto his property. In response, Casaballe apparently informed Sansac that he was no longer permitted to operate the buses because they were uninsured. Casaballe has evidently not seen the buses or spoken to Sansac since.[2] Either way, the evidence indisputably showed that, at some point after Casino discontinued its use of the website and the phone number, Sansac began using both to take customer reservations for shuttle trips to and from Sawgrass Mills.

The parties presented precious little evidence, one way or the other, about Tour95. As relevant here, Casaballe testified that he started Tour95 only as a means of obtaining local government permits to operate Casino's buses. Tour95 remains active and has a website, miamitours95.com, but never operated a shuttle or had any capacity to take reservations for shuttle

---

[1] For reasons that are not at all clear, the Plaintiffs elected not to cross-examine Casaballe about their theory that he had conspired with Sansac to transfer ownership of the number and the website to Sansac in the latter part of 2018.

[2] Casaballe testified that he last heard about the buses when a bank called to tell him that the buses would be repossessed—though Casaballe could not say whether the buses were ever, in fact, repossessed.

services. At some point, miamitours95.com displayed a link to the sawgrassmillsshuttle.com website. According to Casaballe, as soon as he learned that miamitours95.com contained a link to the shuttle's website, he contacted a web designer and directed him to remove the link. There is thus no evidence that Tour95 ever operated a single bus trip, that it ever received or handled a single shuttle reservation, or that there is any risk that it will continue to do either at any time in the future.

## **The Law**

A plaintiff seeking a preliminary injunction "must clearly establish the following requirements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the plaintiff outweighs the potential harm to the defendant; and (4) that the injunction will not disserve the public interest." *Keister v. Bell*, 879 F.3d 1282, 1287 (11th Cir.) (internal quotation marks omitted), *cert. denied*, 139 S. Ct. 208 (2018). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Id.* (internal quotation marks omitted).

## **Analysis**

The Plaintiffs have not met their burden of establishing that the Court's failure to enter a preliminary injunction against Casino or Tour95 would expose them to "a substantial threat of irreparable injury." *Keister*, 879 F.3d at 1287. To be sure, the evidence strongly suggests that Sansac, through Half Price, continues to operate a shuttle bus business that both infringes the Sawgrass Marks and causes significant consumer confusion—all to the Plaintiffs' detriment. For this reason, the Court has entered default judgments and permanent injunctions against both Sansac and Half Price. [ECF Nos. 63, 65]. But the Plaintiffs have presented no evidence to support their

7

view that either Casino or Tour95 is currently operating a shuttle business or in any way infringing the Plaintiffs' trademarks. Indeed, the undisputed evidence conclusively established that neither Casino nor Tour95 is actively engaged in any business at all.

During oral argument, the Plaintiffs for the first time advanced a new theory, not raised in their Motion—that, in November 2018, Casaballe had conspired with Sansac and Half Price to continue operating the Sawgrass-branded buses after Casino's operations had ceased. The Court finds this new theory unpersuasive for two reasons.

*First*, Casaballe is not a Defendant to this action. Even if the Plaintiffs' conspiracy theory were true, therefore, it would still fail to demonstrate that the *ongoing* conduct of *the remaining Defendants*, Casino and Tour95, exposes the Plaintiffs to "a substantial risk of irreparable injury."

*Second*, Casaballe testified that he tried to stop Sansac from continuing to operate the shuttle buses after the Service Agreement's termination. Indeed, he even went so far as to admit that he had broken into Sansac's lot in order to remove the license plates from Casino's buses. And, when he learned that Tour95's website still contained a link to sawgrassmillsshuttle.com, Casaballe acted swiftly to remove the link. Casaballe's undisputed testimony on these points seriously undermines the Plaintiffs' conspiracy theory.

In this respect, the Court notes that the Plaintiffs elected not to cross-examine Casaballe about their theory. The Court cannot grant the "extraordinary and drastic remedy" of a preliminary injunction on what amounts to little more than unsupported speculation—speculation, the Court should add, that was never raised in the Motion and which was belied by the record evidence.[3]

---

[3] The Plaintiffs are not without remedy, however. After all, they have already obtained permanent injunctions against Sansac and Half Price—the only entities who appear to be actively infringing the Sawgrass Marks.

8

## Conclusion

For the foregoing reasons, the Court hereby **ORDERS AND ADJUDGES** that the Plaintiffs' Motion for Preliminary Injunction [ECF No. 6] is **DENIED** as to the Defendants, Casino Travel, Inc., and Tour95, LLC. Moreover, in light of the Court's entry of final judgments and permanent injunctions against the Defendants, John Sansac and Half Price Tour Tickets, LLC, the Plaintiffs' Motion [ECF No. 6] is **DENIED AS MOOT** with respect to those Defendants. Finally, with respect to the now-dismissed Sol Taylor, the Motion is likewise **DENIED AS MOOT**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 9th day of July 2019.

                                                            **ROY K. ALTMAN**
                                                            **UNITED STATES DISTRICT JUDGE**

cc:    counsel of record