UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 19-60807-CIV-ALTMAN/HUNT

SIMON PROPERTY GOUP, L.P., et al.,

    Plaintiffs,

v.

CASINO TRAVEL, INC., et al.,,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on Defendants' Motion for Attorney Fees, ECF No. 73. The Honorable Roy K. Altman referred Defendants' Motion to the undersigned for a Report and Recommendation. ECF No. 74; *see also* 28 U.S.C. § 636; S.D. Fla. L.R., Mag. R. 1. Upon thorough review of the record and Plaintiff's Motion, the undersigned respectfully RECOMMENDS that Defendants' Motion for Attorney Fees, ECF No. 73, be DENIED for reasons more fully set forth below.

## BACKGROUND

On January 14, 2019, Plaintiffs (collectively referred to as "Sawgrass Mills") notified Defendants Casino and Tour95 (collectively referred to as "Casino") and the other Defendants by letter of Casino's alleged improper infringement of Sawgrass Mills' trademarks and demanded that they cease and desist all infringing conduct. Defendant Casino never responded to the cease and desist letter. Accordingly, on March 27, 2019, Plaintiffs brought this action against Defendants seeking temporary and permanent injunctive relief based upon the Defendants' infringement of Sawgrass Mills' trademarks.

Sawgrass Mills brought this action pursuant to this Court's subject matter jurisdiction under 5 U.S.C. § 1121 (actions arising under the Federal Trademark Act); 28 U.S.C. §1331 (actions arising under federal laws); 28 U.S.C. §1338(a) (acts of Congress relating to trademarks); and 28 U.S.C. §1367(a) (supplemental jurisdiction over Sawgrass Mills' derivative state law claims).[1]  ECF No. 1, ¶¶ 11-12.

On March 28, 2019, Plaintiffs filed their Motion for Preliminary Injunction against all parties named in the Complaint, including Casino and Tour95.  Prior to the hearing on this Motion, Sawgrass Mills made numerous attempts to notify Casino of the pending lawsuit and its obligation to confer and respond to the pending motions.  Casino's counsel did not file a notice of appearance until the day before the hearing on the motion for preliminary injunction and filed no written response to the motion.  On May 9, 2019, and May 29, 2019, this Court held evidentiary hearings on Plaintiffs' Motion for Preliminary Injunction.  On June 26, 2019, Partial Final Judgments and Permanent Injunctions were entered against Defendants Half Price Tour Tickets, LLC and John Sansac.  ECF Nos. 63, 65.  On July 10, 2019, Plaintiffs' Motion for Preliminary Injunction was denied as to Defendants Casino Travel, Inc. and Tour95, LLC.  ECF No. 69.  On July 12, 2019, Plaintiffs filed a Notice of Voluntary Dismissal without prejudice of Defendants Casino and Tour95 pursuant to Rule 41(a)(1)(A)(i).[2]  Leave of court was not required to file the Notice of Voluntary Dismissal since it was filed prior to an Answer being filed by Defendants.  On July 15, 2019, this action was dismissed, Defendants' Motion to Dismiss was denied as

---

[1] The undersigned notes that the federal and state law claims involve the same facts and are subsumed within each other and are inextricably intertwined.

[2] Defendants never obtained any ruling on the merits of Sawgrass Mills' claims against them, and Sawgrass Mills is free to re-file their claims against Casino and Tour95.

moot, and the case was administratively closed.

On September 1, 2019, Defendants Casino and Tour95 filed the instant Motion seeking recovery of their attorney's fees pursuant to Rule 54(d)(2) arguing, among other things, that Defendants are the prevailing parties. ECF No. 73.

## **DISCUSSION**

Numerous arguments are presented in support of the Motion for Attorney's Fees but the threshold issue that the undersigned must resolve is which party is the prevailing party. Both parties argue that they prevailed. The undersigned finds for the reasons stated below that Plaintiffs are the prevailing parties. As a result, the undersigned recommends that Defendants' motion be denied

In the Eleventh Circuit, the prevailing party analysis requires a determination of whether a "court-ordered material alteration of the legal relationship between the parties has occurred." *Smalbein ex rel Estate of Smalbein v. City of Daytona Beach*, 353 F.3d 901, 904-906 (11th Cir. 2003) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)). "In other words, there must be: (1) a situation where a party has been awarded by the court 'at least some relief on the merits of his claim' or (2) a 'judicial imprimatur on the change' in the legal relationship between the parties." *Smalbein*, 353 F.3d at 905 (quoting *Buckhannon*, 532 U.S. at 603, 605).

The parties complicate what is a straightforward fact regarding who is bound by the terms of the permanent injunctions. The permanent injunctions entered by this Court provided relief against the named Defendants, Half Price Tour Tickets, LLC and John Sansac, and enjoined "any persons acting in concert and participation with them from

using any mark…that is identical or confusingly similar to Plaintiffs' trademarks, for any purpose". ECF Nos. 63, 65. The language applied to "any persons", which would include the other Defendants.[3] In fact, this Court noted that Defendants, Casino and Tour95, would be subject to the permanent injunctions already entered by the Court against the other Defendants. ECF No. 69 n.3. In the Order on Plaintiffs' Motion for Preliminary Injunction, ECF No. 69 n. 3, this Court specifically held in denying Plaintiffs' preliminary injunction against Casino and Tour95 that "[t]he Plaintiffs are not without remedy, however. After all, they have already obtained permanent injunctions against Sansac and Half Price—the only entities who appear to be actively infringing the Sawgrass Marks." Since the evidence established that Casino would only be able to act through Sansac and Half Price, the permanent injunctions against them also could be used to enjoin Casino and Tour95.

At the Preliminary Injunction hearing, the parties presented testimony and exhibits that established the following relevant facts. Casino, through its president, Diego Casaballe, entered into a contract with Sawgrass Mills (the "Service Agreement"), whereby Casino agreed to provide private shuttle services to transport customers to Sawgrass Mills. See ECF No. 6-1 at 12–22. The Service Agreement allowed Casino to use the Sawgrass Marks to promote its shuttle services. *Id.* at 13. At the same time, the

---

[3] Defendants attach a proposed order to their Reply to this Motion that was never entered by this Court at ECF No. 80-1 and make an argument that certain conclusions should be drawn since this Court used its own orders rather than the one proposed by Plaintiffs. This argument is without merit. Additionally, the assertion that this Court did not envision application of the terms of the permanent injunctions to the Defendants, Casino and Tour95, is belied by the actual language of the Order of this Court at ECF No. 69 n.3 as explained *supra*. The undersigned also notes that Defendants' pleadings are replete with disparaging commentary about Plaintiffs' arguments that are not helpful or necessary.

Agreement required Casino to cease using the Sawgrass Marks—and to destroy or return to Sawgrass Mills all materials bearing the Sawgrass Marks—immediately upon the expiration or termination of the Service Agreement. *Id.* The Service Agreement was renewed multiple times. The final renewal took effect on October 1, 2018, and would have expired on March 31, 2019. *Id.* at 12. Notably, Sawgrass Mills retained the right to terminate the Service Agreement for any reason during the renewed term. *Id.* at 13.

Much of the testimony surrounded a November 14, 2018 meeting attended by Casaballe, Sawgrass Mills Director of Tourism Victoria Cervantes, Sawgrass Mills Marketing Director Chris Valle, and Sansac (a South Florida tourism services provider who owned Half Price). At the time of the meeting, the parties agree, Casino's financial condition was poor. During the meeting, Casaballe informed the Sawgrass Mills representatives that **Sansac would be helping Casino** to operate the Sawgrass-branded shuttles, which were now housed in a parking lot that Sansac owned. According to the Sawgrass Mills representatives, **Casaballe also informed them that Sansac had taken control of sawgrassmillsshuttle.com, a website Casino had previously operated, which displayed the Sawgrass Marks for the purpose of advertising Casino's shuttle services.**

The news at the November 14 meeting alarmed the Sawgrass Mills representatives because the Service Agreement prohibited Casino from assigning any of its rights under that agreement to any other party without Sawgrass Mills' prior written consent. See ECF No. 6-1 at 17. Shortly after the meeting, Sawgrass Mills instructed Casaballe and Sansac to remove both the Sawgrass-branded wrapping from the shuttle buses and the Sawgrass Marks from the sawgrassmillsshuttle.com website. On

November 29, 2018, after it became clear that neither Casaballe nor Sansac planned to respond to its demand, Sawgrass Mills sent Casino a written notice terminating the Service Agreement. *Id.* at 24.

Since the Service Agreement was with Casino, Plaintiffs had no choice but to sue Casino. Likewise, the testimony established that Casino was initially working with Sansac and obtained his "help" to operate the Sawgrass branded shuttles and the website displaying the Sawgrass Marks for the purpose of advertising Casino's shuttle services. At the hearing on the preliminary injunction, the evidence established that Casino was shut down in late November 2018 and that Casino was no longer in operation. This Court found the "evidence strongly suggests that Sansac, through Half Price, continues to operate a shuttle bus business that both infringes the Sawgrass Marks and causes significant consumer confusion—all to the Plaintiffs' detriment." ECF No. 69 at 7. For that reason, the default judgments and permanent injunctions were entered against Sansac and Half Price. This Court also found that "Plaintiffs presented no evidence to support their view that either Casino or Tour95 is currently operating a shuttle business or in any way infringing the Plaintiffs' trademarks." ECF No. 69 at 7-8. At the time of the termination of the Service Agreement, Casino was only acting through Sansac and Half Price. Accordingly, the permanent injunctions against those Defendants provided the Plaintiffs with the relief necessary should Casino attempt to use Sawgrass Mills' Marks by acting in concert or participation with the enjoined Defendants.

Since the undersigned finds that Plaintiffs prevailed by obtaining the relief requested in their action, the undersigned need not address the remaining issues regarding the effect of a notice of voluntary dismissal without prejudice or the

6

reasonableness of the fees or hourly rate requested.  The entitlement issue is dispositive of this Motion.

## **RECOMMENDATION**

Based on the foregoing, the undersigned RECOMMENDS that Defendants' Motion for Attorney Fees, ECF No. 73, be DENIED.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2018); *see Thomas v. Arn*, 474 U.S. 140 (1985).

DONE AND SUBMITTED at Fort Lauderdale, Florida this 23rd day of January 2020.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Honorable Roy K. Altman
All Counsel of Record