UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-60807-CIV-ALTMAN/Hunt

**SIMON PROPERTY GROUP, L.P., et al.**,

    *Plaintiffs*,

v.

**CASINO TRAVEL, INC., et al.**,

    *Defendants*.

_____/

## ORDER

Before the Hon. Roy K. Altman:

    Sawgrass Mills—the owner of a large shopping mall—contracted with Casino for bussing services to and from its mall. To advertise that partnership, Casino displayed various Sawgrass Mills trademarks on its busses and website. When Casino's financial condition declined, it partnered—in clear violation of the contract's anti-assignment clause—with John Sansac and Sansac's company (Half Price), who took over Casino's Sawgrass Mills-branded busses and website. What's worse, even after Sawgrass Mills terminated its agreement with Casino, Sansac and Half Price continued to use the Sawgrass Mills marks.

    In this trademark-infringement action, Sawgrass Mills (primarily) sought injunctive relief. Because Sansac and Half Price never appeared in the case, the Court entered a final default judgment and permanent injunction against them. That injunction expressly applied to Sansac, Half Price, and "*any persons* acting in concert and participat[ing] with them." When Sawgrass Mills terminated its contract with Casino, Casino was acting *only* through Sansac and Half Price. As a result, Sawgrass Mills received precisely what it sought from this lawsuit: an injunction

1

barring *all* Defendants (including Casino) from using its marks. Having achieved that result—and wisely hoping to avoid the needless expenditure of time and money—Sawgrass Mills voluntarily dismissed its case as to Casino.

That's when things took a strange turn. Despite playing only a (very) minimal role in the case—and ignoring the fact that it, too, like Sansac and Half Price, was subject to the Court's injunction—Casino moved for over $90,000 in attorneys' fees, arguing (illogically) that, in fact, *it* was the prevailing party. This Court referred that motion to U.S. Magistrate Judge Patrick M. Hunt, who (unsurprisingly) concluded that, if anything, *Sawgrass Mills*—and *not* Casino—had prevailed. As this summary should have made clear, this Court will **AFFIRM** the Magistrate Judge's decision.

## THE FACTS

On March 27, 2019, the Plaintiffs, Simon Property Group, L.P., Simon-Mills III, LLC, and Sunrise Mills (MLP), L.P. (collectively, "Sawgrass Mills"), brought this action for injunctive relief and damages against the Defendants, Casino Travel, Inc. ("Casino Travel"); Tour95, LLC ("Tour95"); Half Price Tour Tickets, LLC ("Half Price"); and John Sansac ("Sansac").[1] *See* Compl. [ECF No. 1]. Sawgrass Mills owns and operates a large shopping mall in Sunrise, Florida. *See* Preliminary Injunction Order [ECF No. 69] ("PI Order") at 2. Casino Travel and Tour95 (together, "Casino") are commonly owned and provide bussing services. *Id.* at 4, 6–7.[2]

---

[1] The Complaint also named Sol Taylor—an individual who (Sawgrass Mills believed) operated, together with the other Defendants, the infringing websites and social media accounts—as a Defendant. *See* Compl. ¶ 8. Soon after the case was filed, though, Sawgrass Mills voluntarily dismissed Taylor from the case. *See* Notice of Voluntary Dismissal [ECF No. 54].

[2] Because Casino Travel and Tour95 are commonly owned—and since, together, they operated the bussing business (Tour95 had the necessary government permits for those busses), *see* PI Order at 6–7—this Court treats them as one.

Sawgrass Mills contracted with Casino (through Casino's owner) to shuttle customers to and from the mall. *Id.* at 4. The contract allowed Casino to use Sawgrass Mills's trademarks to promote its services. *Id.* The contract also (1) prohibited Casino from assigning any of its rights under that agreement without Sawgrass Mills's prior written consent, (2) allowed Sawgrass Mills to terminate the contract for any reason, and (3) required Casino to stop using Sawgrass Mills's marks on the agreement's expiration (or termination). *Id.* at 4–5.

During the course of this service contract, Casino's financial condition deteriorated. *Id.* at 4. To continue providing shuttle services, Casino partnered with Sansac—a South Florida tourism services provider who owned Half Price. *Id.* As part of that partnership, Casino transferred to Sansac and Half Price both (1) the Sawgrass-branded shuttle busses and (2) a website Casino had previously operated, which displayed the Sawgrass Mills marks and advertised the company's shuttle services. *Id.* at 4–5. Learning of this arrangement, Sawgrass Mills demanded that the Defendants stop infringing on their marks and (then) promptly terminated its service contract with Casino. *Id.* at 5. Casino Travel later went out of business and dissolved. *Id.* at 5–6.[3]

But, even after Sawgrass Mills terminated the service contract, Sansac and Half Price continued to operate the Sawgrass-branded busses and website. *Id.* at 5. The quality of the shuttle service substantially declined during this time, and the continued operation resulted in a significant increase in marketplace confusion. *Id.* So, on March 27, 2019, Sawgrass Mills—left with no choice—brought this action, through which it (mainly) sought temporary and permanent injunctive relief against the Defendants. *See generally* Compl.

The Complaint asserted federal claims of trademark infringement, false designation of origin, and unfair competition—in addition to some supplemental state-law claims. *See generally*

---

[3] Tour95, however, is still active. *See* PI Order at 6–7.

*id*. One day after filing the Complaint, Sawgrass Mills moved for a preliminary injunction against the Defendants. *See* Motion for Preliminary Injunction [ECF No. 6]. This Court resolved that motion in two stages.

*First*, on June 26, 2019, after Half Price and Sansac failed (for several months) to appear, this Court entered default final judgments and permanent injunctions against both of them. *See* [ECF Nos. 63, 65, 80]. Crucially, the injunction applied broadly to Half Price, Sansac, and "any persons acting in concert and participation with them." Permanent Injunction Against Half Price [ECF No. 63]. In full, that injunction provided as follows:

> A permanent injunction is entered against Half Price, enjoining it, its managing members, officers, directors, agents, employees, and any persons acting in concert and participation with them from using any mark, name, slogan, word, phrase, Internet domain, trade name, business name, or device that is identical or confusingly similar to the Plaintiffs' trademarks, for any purpose . . . .

*Id.* at 1.[4]

*Second*, on July 10, 2019, after conducting evidentiary hearings,[5] the Court—having already granted an injunction against Half Price and Sansac—denied Sawgrass Mills's Motion for Preliminary Injunction as to Casino, the only remaining Defendant in the case. *See generally* PI Order. But this decision—to deny the request for a preliminary injunction against Casino—was (notably) *not* based on the merits. *Id.* at 7–9. Instead, the Court ruled that Sawgrass Mills had not

---

[4] The injunction against Sansac was substantially the same. It provided:

> A permanent injunction is entered against Sansac, enjoining him and any persons acting in concert and participation with him from using any mark, name, slogan, word, phrase, Internet domain, trade name, business name, or device that is identical or confusingly similar to the Plaintiff's trademarks, for any purpose . . . .

Permanent Injunction Against Sansac [ECF No. 65] at 1.

[5] Casino did not appear in this case until *one* day before the preliminary injunction hearing and, as a result, filed no written response to the motion.

4

shown a "substantial threat of irreparable injury" because—by that point—the Sawgrass-marked shuttles and website were operated entirely through Half Price and Sansac, who had *already* been enjoined from further infringing on Sawgrass Mills's intellectual property. *Id.* at 7.

A few days after this Court entered its Preliminary Injunction Order, Sawgrass Mills—satisfied that it had obtained the relief it was after—voluntarily dismissed Casino from the case. *See* Notice of Voluntary Dismissal [ECF No. 70]. Because Sawgrass Mills voluntarily dismissed Casino *before* Casino answered to the Complaint, Sawgrass Mills did not need leave of court. *See* FED. R. CIV. P. 41(a)(1)(A)(i). Casino thus received no ruling in its favor *on the merits*; and, indeed, Sawgrass Mills remains free to *re-file* its claims against Casino.

Despite having participated in only two hearings—and filing a single motion to dismiss (which never ripened)—Casino seeks over $90,000 in attorneys' fees. *See* Motion for Attorneys' Fees [ECF No. 73] (the "Motion") at 14. This Court referred that Motion to U.S. Magistrate Judge Patrick M. Hunt, who (noting that Casino *had not* prevailed) recommended that this Court deny Casino's request. *See* Report and Recommendation [ECF No. 81] (the "Report"). Casino timely objected to the Report. *See* Objections [ECF No. 82]. For the reasons set out below, the Court now affirms.

## THE LAW

A district court "may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter." FED. R. CIV. P. 54(d); FED. R. CIV. P. 72. "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). But, when no party has timely objected, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED. R. CIV. P. 72 advisory committee's notes.

5

Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged that Congress's intent was to require *de novo* review only when objections have been properly filed—and not when neither party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). And so, the "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citing *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)).

## ANALYSIS

This dispute over attorneys' fees rapidly devolved into a (misguided) quarrel over the application of state verses federal law—along with a doubly unnecessary back-and-forth over the meaning of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). So, Casino cited Fla. Stat. § 817.41(6)—a provision that awards attorneys' fees to prevailing parties in misleading advertising suits—for its position that its fee request is governed by *state* law. *See* Motion at 5. Sawgrass Mills, on the other hand, pointed to the Lanham Act's fee provision—15 U.S.C. § 1117—for its view that *federal* law applies. *See* Response [ECF No. 77] at 2. Ultimately, of course, this *Erie* dispute is beside the point because Casino isn't entitled to fees under either standard.[6]

### A. Casino Is Not Entitled to Fees Under Federal Law

The Lanham Act provides that "[t]he court in *exceptional* cases may award reasonable attorney fees to the *prevailing party*." 15 U.S.C. § 1117(a) (emphases added); *see also N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*, 395 F. App'x 563, 565 (11th Cir. 2010) ("Parties

---

[6] Because Casino timely objected to Judge Hunt's Report, the Court reviews Casino's arguments *de novo*.

6

who prevail on claims under the Lanham Act may recover their reasonable attorney's fees 'in exceptional cases.'" (quoting 15 U.S.C. § 1117(a)). In our case, Casino is not entitled to fees both because this was not an "exceptional case" *and* because Casino was not the "prevailing party."

*First*, this case is in no way "exceptional." Under the Lanham Act, an "exceptional case" is one that "'stands out from others,' either based on the strength of the litigating positions or the manner in which the case was litigated." *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)); *see also Most Worshipful Nat'l Grand Lodge v. United Grand Lodge GA AF & AYM, Inc.*, 813 F. App'x 455, 460 (11th Cir. 2020) (applying the "stands out from others" test).

As a preliminary matter, Casino has never even suggested that this case is exceptional. It has thus waived any such argument—a waiver that's sufficient to dispose of any claim it may have had to fees under § 1117. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived."). But, even if Casino had not waived this argument, absolutely nothing "stands out" about the strength of Sawgrass Mills's claims or its strategy in litigating this case. Indeed, on the merits, Sawgrass Mills got exactly what it wanted—an injunction directly against two Defendants and indirectly against the two others. Nor did Sawgrass Mills act (in any way) unreasonably during the litigation. It did not (for instance) generate needless motions practice, delay matters, fail to comply with court orders, or employ vexatious discovery tactics. To the contrary, because of Sawgrass Mills's diligence and professionalism, the case was closed *in under*

*four months*. On these facts, there is nothing exceptional about this run-of-the-mill trademark case.[7]

*Second*, any claim to fees under § 1117 is (doubly) doomed because Casino did not prevail in the case. Under federal law, to determine whether a party has prevailed, we must assess "whether a 'court-ordered . . . material alteration of the legal relationship of the parties' has occurred." *First Time Videos, LLC v. Oppold*, 559 F. App'x 931, 932 (11th Cir. 2014) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001)). "In other words, there must be: (1) a situation where a party has been awarded by the court 'at least some relief on the merits of his claim' *or* (2) a 'judicial *imprimatur* on the change' in the legal relationship between the parties." *Smalbein v. City of Daytona Beach*, 353 F.3d 901, 905 (11th Cir. 2003) (quoting *Buckhannon*, 532 U.S. at 603, 605).

In our case, Casino received neither court-awarded "relief on the merits" *nor* any "judicial imprimatur" on "the change" in its "legal relationship" with Sawgrass Mills. Sawgrass Mills voluntarily dismissed Casino from the case under Federal Rule of Civil Procedure 41(a)(1)(A)(i). This provision specifically allows a plaintiff to voluntarily dismiss a defendant "without prejudice" (i.e., not on the merits), *see* FED. R. CIV. P. 41(a)(1)(B), and "without a court order" (i.e., without judicial imprimatur), *see* FED. R. CIV. P. 41(a)(1)(A). And the Eleventh Circuit has been pellucid on this point. In *First Time Videos*, for instance, the defendant—who had been voluntarily dismissed under Rule 41(a)(1)(A)(i) (the very same provision at issue here)—sought fees as the

---

[7] *Cf. Domond v. PeopleNetwork APS*, 750 F. App'x 844, 848 (11th Cir. 2018) (finding that the district court did not abuse its discretion in concluding that the case was "exceptional" where the claims were "baseless" and "unusually weak"); *Tobinick*, 884 F.3d at 1118–19 (finding that the district court did not abuse its discretion in concluding that the case was "exceptional" where the plaintiffs "repeatedly" pressed the same issues and sought to "multiply the proceedings by adding new parties and claims" eleven months into the case).

8

"prevailing party" in a copyright suit. 559 F. App'x at 931. The Eleventh Circuit rejected this request, holding that, because the plaintiff had only "dismissed voluntarily its complaint . . . under Fed. R. Civ. P. 41(a)(1)[A](i)," the defendant had "failed to demonstrate 'prevailing party' status." *Id.* at 932; *see also RFR Indus., Inc. v. Century Steps, Inc.*, 477 F.3d 1348, 1353 (Fed. Cir. 2007) ("We hold that a plaintiff's voluntary dismissal without prejudice pursuant to Rule 41(a)(1)[A](i) does not bestow 'prevailing party' status upon the defendant.").[8]

### B. Casino Is Not Entitled to Fees Under State Law

Casino's retreat to state law fares no better. Florida Statutes § 817.41—Florida's misleading-advertising statute—provides, in pertinent part, that "[a]ny person *prevailing* in a civil court action for violation of this section shall be awarded costs, including reasonable attorney's fees." FLA. STAT. § 817.41(6) (emphasis added). "In general, when a plaintiff voluntarily dismisses an action, the defendant is the prevailing party." *Thornber v. City of Ft. Walton Beach*, 568 So. 2d 914, 919 (Fla. 1990). But Florida courts routinely acknowledge that "this rule does not apply without exception and that a court may look behind a voluntary dismissal at the facts of the litigation to determine if a party has prevailed." *Residents for a Better Community v. WCI Communities, Inc.*, 291 So. 3d 632, 634 (Fla. 2d DCA 2020); *Kelly v. Bankunited, FSB*, 159 So. 3d 403, 406 (Fla. 4th DCA 2015) (recognizing that "strictly apply[ing] the general rule [of

---

[8] Under Rule 41(a)(1)(B)'s "two-dismissal rule," a *second* voluntary dismissal "operates as an adjudication on the merits." FED. R. CIV. P. 41(a)(1)(B). But, in *First Time Videos*, the Eleventh Circuit held that *even* such an adjudication on the merits would not confer on the defendant prevailing-party status because "the dismissal itself [would] still [be] automatic and not the result of court action." 559 F. App'x at 932. In other words, such a voluntary dismissal would not constitute *court-awarded* relief on the merits. *Id.*

9

*Thornber*] would elevate form over substance and lead to a result contrary to the purpose of" fee-shifting statutes).[9]

Rather than (myopically) focusing on form, "courts must look to the substance of litigation outcomes—not just procedural maneuvers—in determining the issue of which party has prevailed in an action." *Tubbs v. Mechanik Nuccio Hearne & Wester, P.A.*, 125 So. 3d 1034, 1041 (Fla. 2d DCA 2013). In assessing the effect of a voluntary dismissal, then, the question is "whether the party succeeded on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Padow v. Knollwood Club Ass'n, Inc.*, 839 So. 2d 744, 745 (Fla. 4th DCA 2003) (cleaned up). Crucially, a plaintiff's decision to voluntarily dismiss an action will not confer prevailing-party status where the plaintiff "recovered the majority of what it sought by filing suit." *Wilson*, 170 So. 3d at 139. At that point, to forge forward with "needless litigation" would be a "waste of resources"—something fee-shifting statutes do not condone. *Valencia Golf & Country Club Homeowners' Ass'n, Inc. v. Cmty. Res. Servs., Inc.*, 272 So. 3d 850, 852–53 (Fla. 2d DCA 2019) (quoting *Padow*, 839 So. 2d at 746).

Here, Sawgrass Mills prevailed on every significant issue. And, indeed, it obtained precisely the relief it sought when it initially filed its lawsuit: an injunction preventing *all* Defendants (including Casino) from further using its trademarks on either the Sawgrass-branded shuttles or the website. Specifically, in entering a permanent injunction against the two defaulted Defendants—Half Price and Sansac—this Court also enjoined "any persons acting in concert and

---

[9] *See also Radosevich v. Bank of New York Mellon*, 245 So. 3d 877, 881 (Fla. 3d DCA 2018) ("[A] court may, under appropriate circumstances, look beyond a voluntary dismissal and consider other facts of the litigation in determining whether a party is the prevailing party for purposes of entitlement to attorney's fees."); *Blue Infiniti, LLC v. Wilson*, 170 So. 3d 136, 139 (Fla. 4th DCA 2015) ("[A] defendant is not automatically the prevailing party for the purpose of an attorney's fee statute when a plaintiff takes a voluntary dismissal." (quoting *Padow v. Knollwood Club Ass'n, Inc.*, 839 So. 2d 744, 746 (Fla. 4th DCA 2003))).

participation with them." As Sawgrass Mills—and Judge Hunt—rightly point out, that injunction effectively prohibited Casino's use of the trademarks, because (at the time of the injunction) Half Price and Sansac had sole possession and control over the infringing busses and website. As Judge Hunt put it: "Since the evidence established that Casino would only be able to act through Sansac and Half Price, the permanent injunctions against them also could be used to enjoin Casino." Report at 4.[10] As a result, rather than press on, Sawgrass Mills—having already obtained the relief it needed—voluntarily dismissed its action against Casino. If any party prevailed, in short, it was Sawgrass Mills, *not* Casino.[11]

Florida courts have denied requests for fees in similar circumstances. In *Padow*, for example, a condominium association sued one of its members for failing to pay the maintenance fees. 839 So. 2d at 745. Months into the litigation, the member paid the association $2,000 in maintenance fees. *Id.* Having received what it viewed as some (but not all) of what it was due, the association eventually voluntarily dismissed the case. *Id.* Like Casino, the member then moved for attorneys' fees. *Id.* The Fourth DCA denied that motion, reasoning that the association only voluntarily dismissed the case *after* the member had "paid the substantial part of the association's claim for delinquent assessments." *Id.* at 746. At that point, to continue the lawsuit "would have been a waste of resources." *Id.* Despite the voluntary dismissal, in other words, the member had

---

[10] Indeed, this Court recognized as much in its Preliminary Injunction Order when it noted that Sawgrass Mills was "not without remedy" against Casino since Sawgrass Mills had "already obtained permanent injunctions against Sansac and Half Price—the only entities who appear to be actively infringing the Sawgrass Marks." *See* PI Order at 8 n.3.

[11] N.B. The Court need not decide today whether Sawgrass Mills prevailed in this case. It is enough to say that Casino didn't. Nevertheless, the Court here adds that, by now, Sawgrass Mills has waived any right it might have had to attorneys' fees—and the Court would not look kindly on any belated attempt to collect those fees. *See* S.D. FLA. L.R. 7.3(a)(1) (providing that a motion for attorneys' fees "shall . . . be filed and served within sixty (60) days of the entry of final judgment or order giving rise to the claim; regardless of the prospect or pendency of supplemental review or appellate proceedings").

11

not prevailed. *Id.* That reasoning is dispositive here. Once this Court entered permanent injunctions against Half Price and Sansac—injunctions that applied with equal force to Casino—Sawgrass Mills got the relief it had been seeking. To continue to litigate the case at that point would thus have been a complete waste of everyone's time. The Court will not punish a party for conserving the litigants'—and this Court's—resources.

In its Objections, Casino cites three cases—all inapposite. *First*, Casino relies on *Black Diamond Properties, Inc. v. Haines*, 36 So. 3d 819 (Fla. 5th DCA 2010). Although that court awarded fees to a voluntarily-dismissed defendant, that case—unlike ours—was one in which "there [was] no confusion over which party prevailed below." *Id.* at 822. Here, though, the parties (obviously) *disagree* over who prevailed—a reasonable disagreement given our injunctive quirk, which was nowhere present in *Black Diamond*.[12] *Second*, Casino points to *Yampol v. Schindler*

---

[12] To the extent the Fifth DCA has adopted the position that *all* voluntary dismissals (*per se*) confer prevailing-party status, *see, e.g.*, *Vidibor v. Adams*, 509 So. 2d 973, 974 (Fla. 5th DCA 1987) (suggesting as much), this Court rejects that position. In applying Florida law, this Court's job is to predict (as best as possible) the rule the Florida Supreme Court might apply in like circumstances. *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1348 (11th Cir. 2011) ("Where the highest court—in this case, the Florida Supreme Court—has spoken on the topic, we follow its rule. Where that court has not spoken, however, we must predict how the highest court would decide this case."). And the Florida Supreme Court already rejected any such *per se* rule when it explicitly said that a voluntary dismissal "[i]n general"—not always—will confer prevailing party status. *See Thornber*, 568 So. 2d at 919. The ineluctable inference, therefore, is that (as other DCAs have recognized) there *are* exceptions to the voluntary-dismissal rule. *See, e.g.*, *WCI Communities, Inc.*, 291 So. 3d at 632 (noting that there are exceptions); *Bankunited, FSB*, 159 So. 3d at 406 (same).

And, for two reasons, this makes sense. *First*, we begin with the plain meaning of the word "prevailing" as that term appears in the statute. *Nesbitt v. Candler Cty.*, 945 F.3d 1355, 1358 (11th Cir. 2020) ("In construing a statute we must begin, and often should end as well, with the language of the statute itself." (quoting *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc))); *cf.* A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 69 (2012) ("The ordinary-meaning rule is the most fundamental semantic rule of interpretation."). "Prevailing" means that which "is or proves to be superior in any contest; victorious; ruling; effective, influential." OXFORD ENGLISH DICTIONARY (3d ed. 2007). Given this meaning, it would seem absurd to conclude that a party—like Casino—was "superior" or "victorious" in a lawsuit when (1) it received no favorable ruling on the merits, (2) the opposing side got all the relief it

12

*Elevator Corp.*, 186 So. 3d 616 (Fla. 3d DCA 2016). In that case, however, the court explicitly recognized that "[t]here are undoubtedly cases in which the general [*Thornber*] rule may be inapplicable to a particular set of circumstances." *Id.* at 617. But, because the plaintiff had not pointed to any such circumstances, the court granted the defendant's motion.[13] *Id*. In our case, by contrast, Sawgrass Mills *has* pointed to the kinds of circumstances that, as mentioned, render the *Thornber* rule inapplicable. *Third*, Casino directs the Court to *Alhambra Homeowners Ass'n, Inc. v. Asad*, 943 So. 2d 316 (Fla. 4th DCA 2006). But that case—unlike ours—involved a plaintiff that voluntarily dismissed its case only after the defendant had filed a sure-to-be-granted motion for summary judgment.[14] *Id.* at 317. Again, Sawgrass Mills dropped *this* case—not in the face of near-certain defeat—but because it had gotten what it wanted.

\* \* \*

Having carefully considered the Motion, the briefing, the record, and the governing law, the Court hereby **ORDERS AND ADJUDGES** as follows:

1. The Report [ECF. No. 81] is **AFFIRMED AND ADOPTED** in full.

2. The Motion [ECF No. 73] is **DENIED**.

---

wanted, (3) the opposing party remains free to re-file its action, and (4) the court entered an unfavorable injunction against that party. *Second*, the Florida Supreme Court—in this Court's view—would be unlikely to adopt a *per se* rule that a voluntary dismissal automatically confers prevailing-party status because of the perverse incentives such a rule would create. Such a rule, after all, would encourage a plaintiff who has already obtained all (or nearly all) the relief it sought to (needlessly) press on with its case. *See Padow*, 839 So. 2d at 746. The Florida Supreme Court is unlikely to adopt such an inefficient rule.

[13] The *Yampol* Court also based its ruling on the fact that the plaintiff had voluntarily dismissed its case in the face of a (likely) adverse ruling on summary judgment. 186 So. 2d at 617. Here, Sawgrass Mills dismissed the case because it obtained the relief it needed—not because it feared losing on the merits.

[14] The plaintiff in that case had (unambiguously) failed to comply with a condition precedent before its lawsuit.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 19th day of October 2020.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record